# United States Court of Appeals
# for the District of Columbia Circuit

### No. 24-1017

LTD BROADBAND, LLC,

*Petitioner,*

*v.*

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents.*

*On Appeal from the Federal Communications Commission in No. FCC-23-103*

## FINAL REPLY BRIEF FOR PETITIONER

STEPHEN E. CORAN
DAVID S. KEIR
LERMAN SENTER PLLC
2001 L Street NW, Suite 400
Washington, DC 20036
(202) 429-8970
scoran@lermansenter.com
dkeir@lermansenter.com

THOMAS M. JOHNSON JR.
JOSHUA S. TURNER
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
tmjohnson@wiley.law
jturner@wiley.law

*Counsel for Petitioner*

August 9, 2024



CP COUNSEL PRESS   (800) 4-APPEAL • (329334)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iii

GLOSSARY ............................................................................... vi

INTRODUCTION AND SUMMARY ........................................... 1

ARGUMENT .............................................................................. 3

   I.    The FCC Applied A Standard Of Review Inconsistent With Its Rules And Procedures ................................... 3

       A.    The FCC Applied A Heightened Standard ...................... 4

           1.   No "Scope, Scale, And Size" Review ....................... 5

           2.   "Reasonably Capable" ............................................. 6

           3.   "Rely On"................................................................. 8

           4.   No "Definitive Finding" ......................................... 10

           5.   "Complete" ............................................................. 11

           6.   "Disclosures" And "Certifications".......................... 12

           7.   RDOF Framework .................................................. 14

       B.    LTD Broadband's Arguments Are Preserved................ 16

       C.    The FCC's Procedural Error Warrants Vacatur............. 18

   II.   The FCC Failed To Provide Fair Notice Of The Requirements It Imposed ........................................ 20

   III.  The FCC Singled Out LTD Broadband For Disparate Treatment............................................................... 24

   IV.  The FCC's Across-the-Board Denial Is Arbitrary And Capricious............................................................... 26

CONCLUSION .......................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All American Telephone Co. v. FCC*,
    867 F.3d 81 (D.C. Cir. 2017)...........................................................................17

*Ams. for Safe Access v. DEA*,
    706 F.3d 438 (D.C. Cir. 2013) ..........................................................................8

*Bell Atl. Tel. Cos. v. FCC*,
    206 F.3d 1 (D.C. Cir. 2000) .............................................................................19

*Belmont Mun. Light Dep't v. FERC*,
    38 F.4th 173 (D.C. Cir. 2022)............................................................................7

*Blanton v. OCC*,
    909 F.3d 1162 (D.C. Cir. 2018) ......................................................................19

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012)..........................................................................................21

*Competitive Enter. Inst. v. FCC*,
    970 F.3d 372 (D.C. Cir. 2020) ........................................................................18

*Davis Broadcasting Inc. v. FCC*,
    63 F. App'x 526 (D.C. Cir. 2003)....................................................................17

*DHS v. Regents of the Univ. of California*,
    591 U.S. 1 (2020)................................................................................................3

*Dickson v. Sec'y of Def.*,
    68 F.3d 1396 (D.C. Cir. 1995) ........................................................................12

*EchoStar Satellite LLC v. FCC*,
    704 F.3d 992 (D.C. Cir. 2013) ........................................................................18

*Gen. Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995) ..................................................................21, 22

*Glob. Crossing Telecomms. Inc. v. FCC*,
    259 F.3d 740 (D.C. Cir. 2001) ........................................................................13

*Int'l Dark-Sky Ass'n v. FCC,*
No. 22-1337, --- F.4th ---, 2024 WL 3381738 (D.C. Cir. July 12, 2024) ...................................................................................13

*Kisor v. Wilkie,*
588 U.S. 558 (2019)........................................................................13

*Northstar Wireless, LLC v. FCC,*
38 F.4th 190 (D.C. Cir. 2022)........................................................22

*Qwest Corp. v. FCC,*
482 F.3d 471 (D.C. Cir. 2007)........................................................16

*Satellite Broad. Co. v. FCC,*
824 F.2d 1 (D.C. Cir. 1987)............................................................24

*SNR Wireless LicenseCo, LLC v. FCC,*
868 F.3d 1021 (D.C. Cir. 2017)......................................................20

*Yee v. City of Escondido,*
503 U.S. 519 (1992)........................................................................17

*Yick Wo v. Hopkins,*
118 U.S. 356 (1886)........................................................................24

**Administrative Proceedings**

*In re Application for Review of LTD Broadband, LLC; Denial of Application for Rural Opportunity Fund/Auction 904*, Order on Review, WC Docket Nos. 10-90, 20-34, 19-126, FCC 23-103 (rel. Dec. 4, 2023)..............................................................5, 18, 23

*In re LTD Broadband LLC Application for Rural Digital Opportunity Fund Support Pursuant to Auction 904*, Application for Review of LTD Broadband, LLC, WC Docket Nos. 10-90, 19-126, OEA Docket No. 20-34 (filed Sept. 8, 2022) ..................................10, 17, 18

*Notice and Filing Requirements and Other Procedures for Auction 904*, Public Notice, 35 FCC Rcd. 6077 (June 11, 2020) .................6, 8, 9, 10, 11

*In re Rural Digital Opportunity Fund, Report and Order*,
35 FCC Rcd. 686 (2020)..........................................................5, 14, 15

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................ 19

47 U.S.C. § 405(a) ................................................................... 16

**Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law (2012) ...................................... 23

# GLOSSARY

APA                     Administrative Procedure Act

Bureau                  Wireline Competition Bureau

FCC                     Federal Communications Commission

RDOF                    Rural Digital Opportunity Fund

## INTRODUCTION AND SUMMARY

In its opening brief, LTD Broadband established that the FCC improperly heightened the standard of review that it had previously promised to apply to winning bidders in its Rural Digital Opportunity Fund auction and relied on vague and unwritten criteria to deny LTD Broadband hundreds of millions of dollars that it planned to use to deploy broadband to rural America. In response, the FCC attacks a strawman, claiming that LTD Broadband suggested that the FCC is "[n]ot authorized to engage in a substantive review of the application." FCC Br. 20. To the contrary, LTD Broadband argued that the FCC's rules required "deferential" or "reasonableness" review—not a rubber stamp, but also not the "deeply searching and skeptical" review the FCC actually applied. LTD Br. 2. The FCC fails to show that it provided the respect due to the considered judgment of those its rules contemplated would have primary responsibility to ensure an applicant's eligibility to receive funding—the bank, the engineer, and the applicant itself.

Instead, the FCC applied a standard that appears to be more stringent than any it had ever applied to a reverse auction winner before except for its contemporaneous (and equally unanticipated) treatment of SpaceX's affiliate Starlink. At every turn, the FCC faulted LTD Broadband for not meeting granular criteria that nowhere appear on the face of its rules—such as the composition of its customer-service centers. The FCC's denial of RDOF funding to LTD Broadband under such

circumstances cannot survive arbitrary and capricious review and fails to provide LTD Broadband with the fair notice that due process requires.

Critically, the FCC never denies that it applied a heightened and novel standard of review to LTD Broadband. LTD Broadband repeatedly emphasized that the FCC applied a novel, heightened "scope, scale, and size" standard. The FCC offers no response; it never even mentions that phrase. Instead, it emphasizes that it simultaneously applied heightened review to Starlink. But the FCC cannot evade a disparate-treatment claim by asserting that it treated two applicants—at the same time, only after both applicants had relied on published rules to make bids that netted hundreds of millions in federal subsidies—worse than all others.

The FCC also effectively concedes that some of the demands it imposed on LTD Broadband were not specified in its rules. It says its rules "set a floor, not a ceiling" for what would be required of LTD Broadband. But the fair-notice doctrine requires agencies to inform regulated parties *ex ante* under what circumstances they will or will not face adverse agency action. Merely informing regulated parties about *part* of what is required—and then imposing an ad hoc series of additional steps after those regulated parties have invested millions of dollars—violates fair notice.

The FCC, moreover, does not deny that its Order relied on the statement in the Auction Procedures Public Notice that winning bidders will be considered in default if found "ineligible or unqualified" to receive RDOF support. And the FCC

does not respond to LTD Broadband's argument that those words are too open-ended and vague to articulate a comprehensible standard and supply meaningful guidance.

Finally, the FCC does not dispute that it could have offered RDOF support with respect to locations for which LTD Broadband was the winning bidder and had obtained Eligible Telecommunications Carrier designation. To the contrary, the FCC acknowledges that it took that approach with certain other winning bidders. The FCC asserts that it simply did not know LTD Broadband preferred to receive RDOF support for those areas rather than receiving no support at all. But that is not a reasonable justification for withholding all support—especially given that the Commission went on to use the denial of all support as the basis for calculating penalties in a pending enforcement action.

"[T]he Government should turn square corners in dealing with the people." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 24 (2020). Because that did not happen here, the Court should vacate the Commission's denial of LTD Broadband's application.

## ARGUMENT

## I.     The FCC Applied A Standard Of Review Inconsistent With Its Rules And Procedures

As LTD Broadband explained, the FCC applied a standard flatly inconsistent with the FCC's own rules. The FCC responds mainly by misrepresenting LTD

Broadband's position and then knocking down the strawmen it creates. Its procedural error requires vacatur.

### A.        The FCC Applied A Heightened Standard

The FCC's characterization of LTD Broadband's position bears no resemblance to LTD Broadband's brief. The FCC says (at 2) that "LTD … asserts that the Bureau was not permitted to review its long-form application for anything beyond completeness." What LTD Broadband actually said—and what the rules themselves state—is that the FCC must conduct a careful yet deferential review.[1] That review is not ministerial, but neither is it wholly independent, deeply probing, or skeptical. Many aspects of the rules compel that conclusion, and the FCC has no persuasive account for any of them. And with respect to many of them, the FCC effectively concedes that the standard it applied is more stringent than the one the rules establish.

---

[1] LTD Broadband explained, for example (at 2), that the rules require the Bureau to review the disclosures and certifications to ensure that they were complete "and" that they "suggested that the applicant was 'reasonably capable' of meeting its deployment benchmarks." The FCC, in turn, says (at 20) that "LTD … asserts that the Commission was not authorized to engage in a substantive review of the application." But LTD Broadband explained (at 27) that "the FCC's review is not ministerial." The FCC suggests (at 3) that LTD Broadband argued that the Bureau "was not permitted to review [the long-form application]." But LTD Broadband said (at 33) that "a winning bidder is by no means guaranteed approval of its long-form application." The FCC says (at 30) that under LTD's position the Bureau can only "verify that the applicant filed the right documents." But LTD Broadband said (at 36) that "merely filling out forms does not guarantee long-form approval." The list could go on.

### 1. No "Scope, Scale, And Size" Review

Nowhere do the rules contemplate more exacting review for smaller companies. To the contrary, in order to avoid "exclud[ing] bidders with more limited revenues or existing customer bases," the rules reject the notion that "further … scrutiny" should be applied to applicants "seeking authority to bid for a large number of locations, relative to the size of their existing customer base." *In re Rural Digital Opportunity Fund, Report and Order*, 35 FCC Rcd. 686 ¶ 76 (2020) ("RDOF Order") (JA230). But after LTD Broadband became a winning bidder, the FCC did an about-face and determined that "further inquiry" into LTD Broadband's application was needed because of the "extensive scope of LTD's winning bids." *In re Application for Review of LTD Broadband, LLC; Denial of Application for Rural Opportunity Fund/Auction 904*, Order on Review, WC Docket Nos. 10-90, 20-34, 19-126, ¶ 23, FCC 23-103 (rel. Dec. 4, 2023) ("Application for Review Denial") (JA312). This "more thorough review" (in the FCC's own words, *id.*) because of a high win-to-size ratio is precisely what the rules say the FCC will not do. The FCC's brief only doubles down on this clear error, using its second paragraph to contrast the size of LTD Broadband's customer base with the large number of locations it won and later conceding (at 46) that it conducted a "further inquiry" because of "LTD's size relative to its winning bid amounts."

The FCC never engages LTD Broadband's argument—placed front and center in its opening brief—that the FCC's heightened "scope, scale, and size" review was improper. LTD Broadband's first issue presented (at 5) is whether the FCC "improperly applied a heightened standard of review" to LTD Broadband's long-form application that "scrutinized the 'scope, scale, and size' of LTD Broadband's winning bids." LTD Broadband repeatedly stressed (at 2) that the FCC "engaged in a previously unarticulated and heightened review of LTD Broadband's 'scope, scale, and size.'"

The FCC's brief never even mentions that phrase. The most the FCC can muster, in a single paragraph on page 46 of its brief, is that the rules direct the Bureau to "verify that the applicant has the plans and capability to scale [its] network if necessary." That comes nowhere near establishing the kind of heightened, non-deferential standard of review for smaller companies that the FCC actually applied.

### 2. "Reasonably Capable"

The rules ask whether the long-form applicant is "reasonably capable" of fulfilling its public-interest obligations. *Rural Digital Opportunity Fund Phase I Auction Scheduled for October 29, 2020; Notice and Filing Requirements and Other Procedures for Auction 904*, Public Notice, 35 FCC Rcd. 6077 ¶ 64 (June 11, 2020) ("Auction Procedures Public Notice") (JA96–97). By using "reasonably capable" rather than simply "capable," the rules and procedures establish a reasonableness

standard for the long-form application. The FCC responds (at 32) that the reasonably-capable standard refers to "what a long-form applicant must show in its application, not how the Bureau must evaluate its application." This argument makes no sense. The reasonably-capable standard plainly concerns an evaluation of capabilities, and it would be both anomalous and a waste of time and resources to require applications to show "reasonable" capability, only to judge those applications by a different and wholly unstated standard. If the applicant is "reasonably capable," then the Bureau must approve the application. And if the Bureau believed it was instead bound by some unstated and unknowable standard, that would itself be grounds for vacating the order as arbitrary and capricious. *See, e.g.*, *Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173, 184 (D.C. Cir. 2022) ("The Administrative Procedure Act's arbitrary-and-capricious standard requires the agency to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (cleaned)).

In its brief, LTD Broadband provided numerous, mutually reinforcing examples of how federal agencies and courts have conducted and understood reasonableness review or close equivalents. *See* LTD Br. 32–33. Against the centuries of caselaw on the legal meaning of the term *reasonable*, the FCC cites (at 32) an online dictionary. But an online dictionary is not the place to look to

understand what the word "reasonably" means in a legal text. When used in a legal text, that word connotes deference. LTD Broadband explained this (at 32), and the FCC has no response.

Arbitrary-and-capricious review, for example, is both deferential and careful—the court ensures that the agency has not gone off the rails but does not substitute its judgment for the expert's. Indeed, some of the language courts have developed to describe arbitrary-and-capricious review closely resembles language that the FCC rules use to describe the FCC's long-form review. For example, arbitrary-and-capricious review is sometimes said to involve a "hard look," much like FCC long-form review is "in-depth." But that language does not mean there is no deference. Under hard-look or in-depth reasonableness review, the reviewer does not "substitute its judgment" for the expert's. *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013).

### 3. "Rely On"

The rules explain that the FCC will "rely on" the judgment of professional experts rather than conducting a wholly independent assessment. Auction Procedures Public Notice ¶ 64 (JA96). The FCC did not rely on the judgment of the professional experts, and its brief does not claim that it did.

The FCC instead emphasizes (at 36) that the rules say that the Bureau will "evaluate the information submitted in the long-form application *and* will rely on"

the professionals.  But that does not free the FCC from the obligation to rely on the experts; the "evaluate" and "rely on" phrases are connected with a conjunctive.  This particular conjunctive, moreover, is a manner-specifying conjunction—the "rely on" phrase explains *how* the Bureau will evaluate the information submitted.  That is, the sentence is not like "she ate a hamburger and a hot dog," which contains an "additive conjunction" and refers to two discrete episodes.  Rather, the sentence is like "they will negotiate the contract and ensure that all terms are favorable."  The post-and part of that sentence specifies the manner in which they will negotiate the contract.  The FCC rules are the same—the Bureau is instructed to evaluate the information submitted with reliance on the judgment of experts.

The FCC does not even attempt to argue that the Bureau heeded that instruction here.  Instead, it resorts to yet another strawman, asserting (at 37) that the letter-of-credit commitment is not "alone sufficient to demonstrate an applicant's financial qualifications."  Of course not.  But it is supposed to carry significant weight, as evident from the "rely on" instruction.[2]  Similarly, instead of deferring to

---

[2] The FCC also asserts (at 37) that it could not rely on the letter of credit because the applicant would not receive it until after the Bureau's determination of financial qualification.  But that makes no sense.  The bank *commits* to provide the letter of credit at the long-form stage, before the Bureau's determination.  That commitment is what the Bureau was supposed to rely on.  *See* Auction Procedures Public Notice ¶ 64 (JA96) (Bureau will "rely on" the bank's "*willingness* to issue the applicant a letter of credit" (emphasis added)).

the independent judgment of the engineer that certified LTD Broadband's network plans, the FCC nitpicks (at 16) the fact that two diagrams describing standard plans for last-mile connectivity for all relevant states are mislabeled "LTD Broadband Kansas Network." But in context these diagrams clearly illustrate last-mile connectivity plans for all bid areas. And if this typo were an issue, one would have expected the FCC to ask LTD Broadband for clarification or correction, as it had in the past.

### 4. No "Definitive Finding"

The rules provide that at the "long-form stage," the FCC will not probe applications to the degree needed to make a "definitive finding" about the applicant's capability because that degree of review would be both "unduly burdensome" and "potentially irrelevant." Auction Procedures Public Notice ¶ 125 (JA122). As LTD Broadband explained in both its Application for Review and in its opening brief, the FCC engaged in definitive-finding review despite this clear language, *see* LTD Br. 40; *In re LTD Broadband LLC Application for Rural Digital Opportunity Fund Support Pursuant to Auction 904*, Application for Review of LTD Broadband, LLC, WC Docket Nos. 10-90, 19-126, OEA Docket No. 20-34, at 9–10 (filed Sept. 8, 2022) ("Application for Review") (JA332–33). The FCC's definitive-finding review flatly conflicts with its rules and its treatment of other RDOF auction winners.

The FCC concedes (at 32) that the rules "demand[] something less than absolute assurance that a long-form applicant would meet its Rural Digital Opportunity Fund public interest obligations." But despite that concession, the FCC continues to assert (at 43–44) that definitive-finding review was appropriate here. That is because, the FCC says, LTD Broadband did not establish that definitive-finding review would be unduly burdensome and potentially irrelevant *in this case*. But as LTD Broadband explained (at 40), that is irrelevant because the rules say that definitive-finding review is *always* prohibited. The "unduly burdensome and potentially irrelevant" language simply explains why the FCC does not apply definitive-finding review as a general matter. The FCC has no response.

### 5.    "Complete"

The Bureau's role in long-form review is largely to ensure that the application is "complete." Auction Procedures Public Notice ¶ 287 (JA162). The FCC acts as though LTD Broadband made this up, but it is what the rules say—multiple times, in fact. *See also id.* ¶ 319 (JA175) (the Commission will issue a public notice after long-form application "is considered complete"). The rules do not say that the Bureau shall review long-term applications solely for completeness; they also establish the reasonably-capable standard that LTD Broadband has discussed in its opening brief and this one. But the fact that the Bureau's role is largely to ensure

completeness is yet another indicator that its review is not intended to be deeply probing and skeptical.  The FCC has no response.

### 6.    "Disclosures" And "Certifications"

The long-form application consists of "disclosures" and "certifications."  It does not ask for written advocacy designed to persuade the FCC that the applicant is deserving.  Instead, the process that the FCC established in the rules and in the long-form application contemplates that applicants submit objective financial data coupled with third-party assessments from financial experts.  The FCC instead granted no deference to anyone, treating itself as the expert on all subject matter involved and subjecting the application to a searching review that the information required by the rules simply was not structured to support.

The FCC says (at 35) that it "never 'indicate[d] that long-form applications are self-authenticating' through certifications," but LTD Broadband has not argued that long-form applications are "self-authenticating," merely that the FCC's review of the information submitted should be deferential.  "[D]eferential review is not the same as no review at all."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1406 n.17 (D.C. Cir. 1995).  The FCC similarly protests (at 26) that it must assess long-form applications "on the merits."  LTD Broadband never suggested otherwise.  Rather, LTD Broadband noted (at 37) that "disclosures" and "certifications" are not subjective *arguments*, and the absence of any requirement that applicants include

lengthy arguments or detailed narrative explanations about their capabilities suggests that "on the merits" review here should be deferential rather than probing or searching. The FCC even quotes (at 26) a dictionary definition of the word "review," but as explained above, LTD Broadband never suggested that the FCC cannot review long-form applications. *Chevron* and *Auer* deference, by analogy, for decades "g[ave] agencies their due, while also allowing—indeed, obligating—courts to perform their reviewing and restraining functions." *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019). The FCC should have performed its reviewing function using a similar approach, giving the disclosures and certifications their due.

The FCC has no real response to LTD Broadband's argument that the rules call for some degree of deference and the FCC applied none. The FCC's own citation (at 36) placed serious weight on certification, concluding that frontend certification coupled with backend enforcement would "accomplish the statutory purpose" at issue. *Glob. Crossing Telecomms. Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001); *cf. Int'l Dark-Sky Ass'n v. FCC*, No. 22-1337, --- F.4th ---, 2024 WL 3381738, at *3 (D.C. Cir. July 12, 2024) (recognizing that the FCC commonly accepts self-certification and that there is no expectation of independent verification when the FCC rules do not so direct). LTD Broadband has never suggested that anything an applicant certifies carries the day, but the disclosures and certifications were entitled to *some* real weight. They received none here.

### 7. RDOF Framework

The backdrop of the RDOF framework reinforces the conclusion that long-form review is not intended as a starting-block tossup as to whether the applicant will make it through. By the time of long-form review, the applicant has expended a great deal of money and time on the auction—including developing and securing the financial information and third-party determinations necessary to fill out the long-form application itself. Bidders "incorporate these costs when determining their strategies prior to the auction." RDOF Order ¶ 110 (JA243). If there generally were no deference or respect given to the certifications and disclosures—if, after all of that, the long-form applicants were subjected to a searching inquiry into their capacity to provide service that would be evaluated on an unknown and unworkable standard concededly stricter than what the rules asked for—there is no doubt that prospective applicants would be substantially less likely to apply.

It is true that deferring to long-form applicants and foregoing a searching review into their capabilities represents a risk on the part of the agency. Critically, though, it is a calculated risk, and one that the Commission openly and explicitly decided as a matter of policy was worth taking. The Auction Procedures Public Notice "strives to carefully balance" "protecting against the potential for … carriers that may fail to fulfill their broadband deployment obligations" with "the Commission's interests in ensuring that universal service dollars are being used

efficiently and for their intended purposes." RDOF Order ¶ 105 (JA241–42). The long-form process sacrifices some amount of frontend certainty to expedite rural broadband deployment and to encourage new entrants to bid for markets that they do not already serve. The Commission's clear intent was to pair this lighter, expedited frontend review with backend safeguards that would ensure good faith participation by applicants in the auction.

The FCC responds (at 40) that the RDOF Order could not have intended to rely on backend safeguards that "only come into play *after*" a support recipient fails to meet its public-interest obligations, but that ignores the concept of deterrence. Backend consequences affect frontend decisionmaking. Indeed, all of criminal law generally works this way—we do not have processes to ensure that people will not prospectively commit a crime; rather, we deter crime by punishing it after it has been committed. No one would say that criminal punishment is ineffective because it "only comes into play *after*" a crime is committed. The FCC's backend safeguards are likewise effective in deterring unqualified bidders from accepting support.

The FCC rules lean on backend safeguards because the Commission made a deliberate choice to push toward "getting rural Americans connected as quickly as possible." *In re Rural Digital Opportunity Fund*, Report and Order, 35 FCC Rcd. 686, 779 (2020) ("RDOF Order, Pai Statement") (JA289). The rules create frontend

guardrails as well through the long-form process, but they were never intended to be as stringent as the FCC thinks they are here, and that is for good reason.

## B.      LTD Broadband's Arguments Are Preserved

Perhaps because the conflict between the FCC's rules and its decision here is so obvious, the FCC twice reaches for contrived waiver arguments.  Section 405(a) of the Communications Act provides that a reconsideration petition is an exhaustion requirement for questions on which the FCC "has been afforded no opportunity to pass."  47 U.S.C. § 405(a).  Section 405 applies paradigmatically when a party complains of "a technical or procedural mistake, such as an obvious violation of a specific APA requirement."  *Qwest Corp. v. FCC*, 482 F.3d 471, 475 (D.C. Cir. 2007).  In *Qwest*, for example, the petitioner challenged the denial of a forbearance request on the ground that the FCC missed a statutory deadline, but never raised the timeliness issue to the FCC.  *See id.*  The issue was waived because there had been no opportunity for the FCC to pass on that very specific and discrete purported problem.

This case is nothing like that.  The FCC argues, implausibly, that LTD Broadband's arguments about definitive-finding review and granting deference to the bank's expertise with respect to the term sheet are waived because LTD Broadband's Application for Review did not object to specific language in the Commission's denial of the Application for Review.  But the FCC acknowledges

(at 43) that LTD Broadband "could not have" responded to the Application for Review denial before it was published. And rather than asking litigants to do the impossible, Section 405(a) merely requires notice. LTD Broadband provided that notice here for at least three reasons.

*First*, LTD Broadband's specific arguments about definitive-finding review and the bank's expertise support its broader argument that the FCC applied the wrong standard of review—the lead argument in LTD Broadband's Application for Review. *See* Application for Review at 2 ("*First*, denial of the Application is fundamentally inconsistent with the Commission's Rules governing the RDOF program. The Bureau applies an incorrect standard of review.") (JA325). Even if LTD Broadband had not expressly presented these sub-arguments to the Commission, therefore, they would be preserved for that reason. In a similar context, district-court waiver doctrine allows litigants to "make any argument" in support of a claim raised below. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). And while district-court arguments must be developed, *Davis Broadcasting Inc. v. FCC*, 63 F. App'x 526, 527 (D.C. Cir. 2003), Section 405(a) merely requires notice, *see All American Telephone Co. v. FCC*, 867 F.3d 81, 93 (D.C. Cir. 2017) ("We do not … require that the issue be raised with '[a]bsolute precision.'").

*Second*, LTD Broadband did expressly make even the sub-arguments in its Application for Review. LTD Broadband specifically observed that the rules bar

definitive-finding review.  Application for Review at 9–10 (JA332–33).  And LTD Broadband argued that the Bureau was supposed to "rely on" the certifications of LTD Broadband and the bank and engineer and noted that its "agreement with its financing source," *i.e.* the term sheet, was one such certification.  *Id.* at 8, 9 & n.23 (JA 331–32).  That far exceeded what LTD Broadband needed to show to afford the FCC the opportunity to pass on those issues.

*Third*, the sub-arguments are not waived because "the agency addresse[d] [them]."  *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 380 (D.C. Cir. 2020).  In its denial of the Application for Review, the FCC rejected LTD Broadband's arguments both about reliance on the bank's expertise and definitive-finding review.  *See* Application for Review Denial ¶¶ 23, 26–28 (JA312–14).  The FCC's "contemplation of the issue[s]" confirms its "opportunity to pass" on LTD's arguments and independently means that they are not waived.  *EchoStar Satellite LLC v. FCC*, 704 F.3d 992, 996 (D.C. Cir. 2013).

## C.     The FCC's Procedural Error Warrants Vacatur

The FCC repeatedly asserts (at 2, 20) that LTD Broadband "does not contend that the Bureau's findings … were incorrect."  That is both inaccurate and irrelevant.  LTD Broadband vigorously contests the FCC's conclusion that LTD Broadband is unqualified for RDOF support, but it is not obligated to prove that the FCC's factual findings are incorrect in order to prevail in this appeal.  All that LTD Broadband

need show is that the FCC violated its procedures in reaching its decision. A criminal defendant does not need to demonstrate his innocence in order to assert that the government has violated his constitutional procedural rights, and the same goes here—LTD Broadband's argument is that the FCC violated its procedural rights, and that alone requires vacatur. 5 U.S.C. § 706(2)(A) (requiring reviewing court to "hold unlawful and set aside" agency action that is procedurally infirm or not in accordance with law); *see also, e.g.*, *Blanton v. OCC*, 909 F.3d 1162, 1176 (D.C. Cir. 2018) (vacating agency decision because agency did not "adhere to its own rules and regulations"); *Bell Atl. Tel. Cos. v. FCC*, 206 F.3d 1, 3 (D.C. Cir. 2000) (vacating agency decision because agency did not explain how the decision "made sense in terms of … the [agency's] own regulations").

*　　*　　*

In sum, the rules time and again indicate that review of long-form applications will be careful but also deferential. That was a policy choice that the FCC made when adopting the rules in order to speed the deployment of broadband funding and encourage new applicants, rather than get mired in lengthy ex ante determinations of capability that threatened to favor large incumbents and delay the disbursement of funds. But here the FCC changed course after it wrote the rules, accepted applications, and conducted the auction. Instead of favoring deployment, it applied

a deeply searching and skeptical standard that was nowhere in the rules and exercised no deference at all. That was arbitrary and capricious.

## II. The FCC Failed To Provide Fair Notice Of The Requirements It Imposed

The FCC failed to provide fair notice of the circumstances in which applicants "will and will not" face adverse agency action. *SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1046 (D.C. Cir. 2017). LTD Broadband had no way of knowing ex ante that its long-form application might be rejected if it retained an outside engineer, or retained the engineer later than the Bureau preferred, or did not estimate the number of customer-service tickets it would receive, or did not provide a defense from the bank of why it extended the letter of credit. The FCC points out (at 52) that it did provide notice of certain *other* requirements, but never claims that it provided notice of the requirements LTD Broadband identified in its opening brief (at 47).

The FCC effectively concedes that it provided notice to LTD Broadband of only some of the requirements it later imposed, asserting (at 49) that its rules "set a floor, not a ceiling" on what LTD Broadband was required to do. The fair-notice doctrine does not allow the FCC to add new unannounced requirements after regulated entities have invested millions of dollars and then say its ex ante notice was only the beginning. The FCC's snark (at 50) that LTD Broadband could have received notice "by reading the regulations," therefore, is nonresponsive. As the

20

FCC admits, the rules did not mention many of the secret requirements the FCC imposed on LTD Broadband after the auction ended.

The FCC argues (at 52–53) that all is fine because the Bureau "spoke with" LTD Broadband "multiple times" and "sent LTD a letter" imposing the new obligations, but that does not solve the problem. Fair notice requires the FCC to inform LTD Broadband of the requirements it intends to impose *before* LTD Broadband invested the immense funds and resources necessary to reach the long-form stage. *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156–57 (2012) ("an agency should not change an interpretation in an adjudicative proceeding where doing so would impose 'new liability ... on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements'").

The FCC cites (at 53) *General Electric v. EPA* for the proposition that "pre-enforcement effort[] to bring about compliance" can satisfy fair notice, but that case refers to an entirely different concept than the FCC's. Creditable pre-enforcement compliance efforts, the Court explained, involve application of already existing rules. "If, for example, an agency informs a regulated party that it must seek a permit for a particular process, but the party begins processing without seeking a permit, the agency's pre-violation contact with the regulated party has provided notice, and we will enforce a finding of liability as long as the agency's interpretation was permissible." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995). If

"reading the regulations" does not enable the regulated entity to "identify, with 'ascertainable certainty,'" the "standards with which the agency expects parties to conform," pre-enforcement compliance efforts cannot save the agency. *Id.* And *Northstar Wireless* and *SNR Wireless* were predicated on prior rulings that the FCC "failed to warn" regulated entities "that they would be denied an 'opportunity to cure'" deficiencies "before being subjected to the Commission's remedies." *Northstar Wireless, LLC v. FCC*, 38 F.4th 190, 201 (D.C. Cir. 2022). Those cases do not upset the well-established fair-notice standard. *See id.* at 216 (quoting *General Electric*'s "ascertainable certainty" articulation).

One example of a notice problem that LTD Broadband identified (at 47) is that it had no way of knowing ex ante that it would be penalized for using an outside engineer or retaining that engineer later than the Bureau preferred. The FCC responds (at 49) by parroting the Order's reasons for why in-house engineering experience might bear on an applicant's qualifications. But that is not responsive to LTD Broadband's argument, which is that the FCC was legally required to alert applicants *in advance of the auction* if it required an in-house engineer. And the FCC does not respond to the other notice problems LTD Broadband identified (at 47) at all—it concedes, rather, that its rules set a floor and not a ceiling.

The notice problem is all the more glaring because as the FCC emphasizes (at 51), its rules "spelled out" many obligations, for instance by "including 22 bullet

points and two diagrams" on the requirements for describing technology and system design. The rules "spell[ed] out," the FCC explains (at 52), "'what information' a long-form applicant had to submit." But the fact that the FCC spelled out what information a long-form application had to submit—without identifying any of the requirements it later imposed on LTD Broadband—supports LTD Broadband, not the FCC. The inference from the FCC's enumeration of various technical and financial criteria was that the FCC was covering its bases and would not impose *additional* requirements ex post. *See, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law 108 (2012) (the "more specific the enumeration, the greater" the likelihood that anything excluded was not intended to be included).

For the most part, the FCC does not defend the Commission's contemporaneous reasoning. In the Order, the Commission argued that fair notice was not required because "it is appropriate to tailor review to the circumstances at the long-form stage" and it was "under no obligation" to "enumerate specific financial parameters." Application for Review Denial ¶ 29 (JA314). But now the FCC asserts (at 51–52) that it *did* give notice, though only of certain requirements. The Commission relied on the rules' statement that a winning bidder will be considered in default if "found ineligible or unqualified to receive [RDOF] support." Application for Review Denial ¶¶ 5, 17 (JA305–06, 310). But the FCC does not

defend that circular reasoning—you are ineligible if we decide you are ineligible—in this appeal.

Moreover, even if adopting an unannounced standard of review were permissible, the FCC cannot penalize LTD Broadband for failing to anticipate that change. As LTD Broadband explained (at 50), a regulated entity has not been given fair notice if it reasonably interpreted the rules. *See, e.g.*, *Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3–4 (D.C. Cir. 1987) ("The Commission through its regulatory power cannot, in effect, punish a member of the regulated class for reasonably interpreting Commission rules."). Rather, the FCC was required to provide fair notice first if it interprets its rules differently than LTD Broadband. The FCC simply ignores this problem—it does not even cite *Satellite Broadcasting*.

## III. The FCC Singled Out LTD Broadband For Disparate Treatment

LTD Broadband explained (at 50–53) that although it is blackletter law that agencies must treat like parties alike, the FCC singled out LTD Broadband and Starlink for disparate treatment.

*First*, LTD Broadband noted that the FCC has never otherwise applied a heightened "scope, scale, and size" review. The FCC does not dispute this. Instead, the FCC argues (at 54–55) that it treated LTD Broadband like it treated Starlink. But the government cannot defeat a disparate-treatment claim by asserting that it treated *two* entities worse than all others. *See, e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)

24

(disparate treatment against two Chinese laundromat owners).  The FCC concedes (at 55) that all "other [denied] applications were denied on completeness or voluntarily withdrawn," and never denies that only LTD Broadband and Starlink received scope-scale-and-size review.[3]  That is disparate treatment.

The FCC's other rejoinder on this point (at 55) is that the decisions denying applications for incompleteness or withdrawal were made by staff.  But the FCC cannot insulate itself from disparate-treatment claims by having staff enter the favorable decisions for favored entities—of course these favorable actions will never be challenged and thus will never be subject to review by the full Commission.  And more pertinently, those are not even the relevant decisions.  (The decisions the FCC cites are not from the disparate-treatment section of LTD Broadband's brief.) Entities who voluntarily withdrew or submitted incomplete applications are not similarly situated to LTD Broadband; the comparator class is entities who submitted complete applications.  The FCC does not deny that it never imposed scope-scale-and-size review on any of those entities.

*Second*, the FCC allowed other RDOF-auction participants to default on some successful bids but receive support for others.  The FCC does not deny this.  Instead,

---

[3] The FCC suggests (at 50 n.9) that Commissioner Carr's vote somehow insulates the Commission from LTD Broadband's challenge.  But unlawful agency action is unlawful no matter how an agency's commissioners voted.  LTD Broadband invoked Commissioner Carr's reasoning in *Starlink* because it is sound and because it applies equally here.

the FCC argues (at 56) that LTD Broadband is differently situated because the other participants defaulted on bids in areas the Bureau thought may already be sufficiently serviced, while it determined that LTD Broadband was unqualified. But the Bureau "waived the Commission's rules" for certain bidders. LTD Br. 51–52 (quoting Bureau). And in any event, the FCC's determination that LTD Broadband was unqualified was itself the product of disparate treatment and cannot serve as a proper basis to treat LTD Broadband disparately in two ways.

## IV. The FCC's Across-the-Board Denial Is Arbitrary And Capricious

The FCC's denial of the entirety of LTD Broadband's application instead of considering partial authorization is arbitrary and capricious. Application for Review at 25 (JA348). The FCC responds (at 58) that LTD Broadband "never raised the possibility of partially granting its application." But the whole point of bidding in the auction was to receive support to build out broadband facilities. LTD Broadband did not explicitly raise the possibility of partial grant with Bureau staff because it anticipated a full grant. There is no plausible reason LTD Broadband might have preferred $0 in support to a portion of the amount it won.

The FCC concedes (at 58) that other winning bidders "were announced as ready-to-authorize in some states but not in others." And it never says why it could not have done the same for LTD Broadband. The FCC does not deny that LTD Broadband held Eligible Telecommunications Carrier designations in eight states

where it had winning bids. The FCC does not deny that it allowed other participants in the RDOF auction to default on some of their successful bids without penalty while still receiving support for other of their successful bids. And the FCC does not deny that its rules explain that the long-form application is "suited" for making "determinations on a [Census Block Group]-by-[Census Block Group] basis." LTD Br. 54–55 (quoting FCC rules). The FCC's failure to even consider partial authorization for a smaller footprint is particularly remarkable in light of the Bureau's repeatedly emphasized concern about the overall scope and geographic breadth of LTD Broadband's winning bids, and because the Commission invoked its denial of all support as the basis for seeking draconian penalties against LTD Broadband. LTD Broadband pointed this out, and the FCC offers no response.

## CONCLUSION

The Court should hold unlawful and set aside the Commission's denial of LTD Broadband's application for review and reinstate LTD Broadband's long-form application.

Respectfully submitted,

/s/ Thomas M. Johnson
Thomas M. Johnson, Jr.
  *Counsel of Record*
Joshua S. Turner
Jeremy J. Broggi
Michael J. Showalter
Daniel T. Park
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
tmjohnson @wiley.law

Stephen E. Coran
David S. Keir
**LERMAN SENTER PLLC**
2001 L Street NW | Suite 400 |
Washington, DC 20036
Tel: (202) 416-6744
scoran@lermansenter.com

August 9, 2024                     *Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32 of the Federal Rules of Appellate Procedure and Circuit Rule 32(e)(1) because it contains 6,423 words and has been prepared in a proportionally spaced typeface using Times New Roman, 14 point.

/s/ Thomas M. Johnson
Thomas M. Johnson, Jr.

**CERTIFICATE OF SERVICE**

I certify that on August 9, 2024, I caused the foregoing to be served upon all counsel of record via the Clerk of Court's CM/ECF notification system.

/s/ Thomas M. Johnson
Thomas M. Johnson, Jr.